UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JANE DOE,<br><br>   *Plaintiff*,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>   *Defendant*. | Civil Action No. 1:24-cv-11445 |

# **COMPLAINT**

## **INTRODUCTION**

1. This case concerns the tortious conduct of a federal officer employed by United States Customs and Border Protection ("CBP") against Plaintiff, Jane Doe ("Plaintiff" or "Jane Doe"), a transgender woman, while she was in CBP custody at Boston Logan International Airport ("Logan Airport").

2. On November 15, 2019, upon returning to the United States from abroad, Jane Doe was detained as she attempted to pass through passport control at Logan Airport. While detained, Jane Doe was escorted to a small interrogation room where an unknown CBP officer (the "CBP Officer") questioned Jane Doe for hours about her identity and immigration status.

3. During the interrogation, and over her repeated objections, the CBP Officer rubbed his erect penis and his body against Jane Doe multiple times while she was visibly and audibly crying. What is more, the CBP Officer forced Jane Doe to expose her breasts to him under the guise that Jane Doe may be deported if she did not submit to his demands or authority. The CBP Officer committed these tortious acts in the course of his duties as an employee of the federal government and a law enforcement officer.

4. The CBP Officer's conduct caused Jane Doe physical injury and severe emotional distress.

5. Accordingly, pursuant to the Federal Tort Claims Act ("FTCA"), Jane Doe brings this action against the United States for the torts of assault, battery, false imprisonment, intentional infliction of emotional distress, and violations of her rights under the Massachusetts Civil Rights Act, in order to seek recovery from the United States for the harm that she has suffered—and continues to suffer to this day—as a result of the tortious conduct of its employee, the CBP Officer.

## JURISDICTION AND VENUE

6.  Jane Doe brings this action pursuant to the Federal Tort Claims Act, 28 U.S.C. §§ 2671–2680. Accordingly, this Court has jurisdiction pursuant to 28 U.S.C. § 1346(b).

7.  Jane Doe has exhausted her administrative remedies under 28 U.S.C. § 2675 before filing this action.

8.  On June 30, 2021, Plaintiff submitted a Notification of Incident and Claim for Damages; a Claim for Damage, Injury, or Death; and supplemental documentation to the Office of the General Counsel of the United States Department of Homeland Security and to the Office of the Chief Counsel of CBP.

9.  On February 20, 2024, CBP issued a final decision denying in full Plaintiff's claim.

10. Venue is proper in the District of Massachusetts under 28 U.S.C. § 1402(b) because Jane Doe resides in this Commonwealth and District, and the acts and omissions set forth in this Complaint occurred at Logan Airport, which is located in this Commonwealth and District.

## PARTIES

### *i. Plaintiff*

11. Plaintiff Jane Doe is a transgender woman and a United States citizen. At the time of the events detailed herein, however, Jane Doe was a lawful permanent resident ("LPR") of the United States. More than a decade before the events in controversy, Jane Doe had been granted asylum in the United States after she was forced to flee Honduras, her country of birth, where she was the victim of violent attacks because of her gender and sexual identity.

3

12. Jane Doe suffers from Gender Dysphoria, a serious medical condition that occurs in persons whose gender identity differs from the sex they were assigned at birth.

13. The standard of care for treatment of Gender Dysphoria—established by the World Professional Association for Transgender Health, the American Medical Association, the American Psychological Association, and other major medical and mental health professional organizations—is to live consistently with one's gender identity, as distinct from sex assigned at birth. This is done through counseling, hormone therapy, gender-affirming surgery, and transitioning socially and legally to the sex associated with one's gender identity.

14. Jane Doe has lived in Massachusetts since 1992 and has been a proud, open, and prominent member of the lesbian, gay, bisexual, transgender, queer, plus community ("LGBTQ+ Community") of greater Boston. She is a political activist and community organizer who has championed numerous causes that seek to protect the rights of all members of the LGBTQ+ Community, and in particular, those of transgender persons.

15. At birth, Jane Doe was assigned the sex male and given a male name. In 1990, at age 19, Jane Doe fled Honduras because she had been the target of repeated violent sexual attacks on account of her gender and sexual identity.

16. Jane Doe later sought asylum in the United States to escape the sexual violence she suffered in Honduras. She was granted asylee status in 2005.

17. Since arriving in the United States, Jane Doe has sought gender-affirming medical treatment to cope with her Gender Dysphoria by living openly as a woman, her true gender identity, without fear of the violence and discrimination she endured in Honduras.

18. As part of her treatment, Jane Doe has received feminizing hormonal therapy since 1998 and has had breast augmentation surgery. In 2002, she legally changed her name to Jane Doe, her current legal name.

### *ii. Defendant*

19. Under the FTCA, the United States has waived its sovereign immunity for certain of the tortious acts or omissions of its agents or employees. Accordingly, the United States is the proper defendant in this action because it is being sued for the tortious conduct of its employee, the CBP Officer, which he carried out within the scope of his employment and duties with CBP. Defendant United States of America manages the United States Department of Homeland Security, which includes CBP. *See* 19 U.S.C. § 1.

20. At all relevant times alleged herein, the CBP Officer was an officer of the United States CBP within the meaning of 6 U.S.C. § 211(e) and therefore a federal law enforcement officer—"empowered by law to execute searches, to seize evidence, or to make arrests for violations of Federal law"—within the meaning of 28 U.S.C. § 2680(h). During the events alleged in this Complaint, the CBP Officer imposed that authority over Jane Doe.

## FACTUAL ALLEGATIONS

21. In 2019, Jane Doe traveled to Colombia to undergo gender-affirming breast augmentation and a surgical procedural on her vocal cords, specifically a Wendler glottoplasty, to align her voice with her gender identity.

22. On November 15, 2019, just ten days after her surgery, Jane Doe returned to the United States from Colombia, via a brief layover in Panama. Upon her arrival in the United States at around 5 p.m. ET, Jane Doe proceeded to passport control at Logan Airport.

23. On several previous occasions, as an asylee and LPR, Jane Doe had passed through the passport control at Logan Airport without incident.

24. When she arrived at Logan Airport's CBP passport control on November 15, 2019, Jane Doe presented valid entry documents to an unnamed CBP officer ("the Passport Officer") for inspection and verification.

25. Because she was under medical orders not to speak, Jane Doe also provided the Passport Officer with a letter, in English, from the otolaryngologist who performed the operation, explaining that Jane Doe was in recovery from a recent surgery just days before. Moreover, the letter stated—in large, capital letters—that Jane Doe's doctor prescribed absolute rest of her voice for several weeks as a part of her rehabilitation.

26. Jane Doe had not spoken in the days since her surgery, since any use of her voice could result in permanent damage to her vocal cords.

27. Upon receiving her documents and the letter from her doctor, the Passport Officer escorted Jane Doe to a large waiting area in order to conduct additional questioning related to her identity and immigration status.

28. Jane Doe spent approximately one hour in the large waiting area. Then, the Passport Officer escorted Jane Doe to a small interrogation room.

29. Once inside the small interrogation room, the Passport Officer left Jane Doe with the CBP Officer. The CBP Officer questioned Jane Doe about her identity and immigration status.

30. Jane Doe primarily speaks Spanish and, at the time, understood some English. At first, an interpreter was present to facilitate the interrogation and investigation. Only a short time after Jane Doe was taken to the interrogation room, however, the interpreter left to assist others.

31.     After the interpreter left, no one else but the CBP Officer entered the interrogation room during the hours-long interrogation that would ensue.  At various times during the interrogation, the CBP Officer opened the only door to, and exit from, the interrogation room.  The CBP Officer stood at, or just outside, its threshold to speak with others who, on information and belief, were also CBP officers.

32.     With no one else present, Jane Doe was left in the interrogation room with the CBP Officer, who continued his questioning in English.

33.     The CBP Officer stated that Jane Doe may be deported to Honduras, the country from which she fled gender-based violence.  Specifically, the CBP Officer warned Jane Doe that CBP had not yet concluded its investigation into her identity and immigration status and that he did not "know what [CBP was] going to do with [her]."  At this time, Jane Doe began to audibly sob and shake with weeping.

34.     Because, at the time, she was an asylee and not a United States citizen, the CBP Officer's statements caused Jane Doe serious distress.  She feared that CBP would deport her to Honduras, the country from which she had fled, seeking asylum from the violence she had suffered there.

35.     The ongoing interrogation about Jane Doe's identity then turned to the topic of her gender.  The CBP Officer's questions became intrusive.  The CBP Officer then asked Jane Doe about her genitalia, specifically whether she had a "pussy or penis."

36.     Jane Doe was frightened by the CBP Officer's salacious demeanor and the threat of deportation.  For fear of what might happen if she did not respond, and despite the fact that the CBP Officer had her doctor's note in his possession, Jane Doe felt she had no choice but to break the vocal rest that her doctor had prescribed to answer the CBP Officer's questions about her

gender identity. She disclosed to the CBP Officer that she is a transgender woman and, at the time, an asylee.

37. The CBP Officer then opened the door to the interrogation room, and while standing in its threshold, he spoke with another person who, on information and belief, was also a CBP officer. As he stood in the doorway of the interrogation room, propping open its door, Jane Doe could hear the CBP Officer say: "Don't worry. She understands English."

38. The CBP Officer then closed the door and walked across the interrogation room.

39. After a few moments, the CBP Officer said that CBP still was not sure of Jane Doe's identity. The CBP Officer then said "let me see your boobies" and ordered Jane Doe to expose her breasts so that he could verify her identity as a woman.

40. Alone, confused, and afraid in the interrogation room, her crying audibly and visibly intensified. She felt she had no choice but to comply with the CBP Officer's command.

41. Jane Doe was overcome with dread and humiliation. Her distress was further compounded by the fact that, just days before, she had also undergone gender-affirming surgery to her breasts, which were now exposed for inspection by the CBP Officer, who stood over her, fully clothed in his CBP uniform.

42. Without explanation, the CBP Officer once again began to move toward the door and sole means of exit from the interrogation room. Before reaching the door, however, the CBP Officer stopped behind Jane Doe, pressed his body against her, and rubbed his erect penis against Jane Doe's buttocks. Jane Doe was filled with panic and dread and continued to cry, visibly and audibly, as the CBP Officer did this.

43. The CBP Officer then continued toward the door and left the interrogation room.

44. When he returned several minutes later, the CBP Officer did not tell Jane Doe that she was free to leave, or when CBP would conclude its interrogation and detention.

45. Rather, the CBP Officer continued his interrogation.

46. He told Jane Doe that he would "help" her with her immigration status and that she "should not worry." As he said this, the CBP Officer licked his lips in a sexually suggestive manner. The CBP Officer told Jane Doe that he "likes transgender women" and continued to lick his lips. The CBP Officer also rubbed his erect penis through his trousers.

47. Jane Doe interpreted the "help" that the CBP Officer was offering as related to CBP's then-ongoing investigation into Jane Doe's identity and immigration status.

48. The CBP Officer again ordered Jane Doe to "let [him] see [her] boobies."

49. After he said this, and without provocation, the CBP Officer propositioned Jane Doe for sex. Jane Doe expressly declined the CBP Officer's proposition by saying "no" and shaking her head from side to side. Jane Doe's refusal did not stop the CBP Officer. He then said that he would like to "fuck" Jane Doe.

50. Just after he said this, the CBP Officer began to move toward Jane Doe as he had previously. As she saw the CBP Officer draw closer to her, Jane Doe was consumed by fear and dread. Again the CBP Officer pressed his body against Jane Doe—who was audibly sobbing and visibly weeping—and rubbed his erect penis against Jane Doe's buttocks.

51. Helpless and alone in the interrogation room, Jane Doe was full of fear and dread as the CBP Officer pressed his body and his penis against her.

52. Nearly three hours into his investigation into Jane Doe's identity and immigration status, the CBP Officer again exited the interrogation room. This time, he returned with Jane

Doe's luggage. Jane Doe was asked to put the luggage on the table, causing her to tear the stitching from her breast augmentation.

53. Without Jane Doe's permission, the CBP Officer opened the luggage and searched its contents. The CBP Officer also searched Jane Doe's phone.

54. After searching her luggage, the CBP Officer produced a Notice to Appear and instructed Jane Doe to sign it.

55. Jane Doe signed the Notice to Appear, and the CBP Officer provided her with a copy of it.

56. At around 9 p.m. ET, for the first time since she had been escorted from the passport control location hours earlier, the CBP Officer told Jane Doe that she was permitted to leave.

57. The CBP Officer's conduct on November 15, 2019, changed Jane Doe's life.

58. The CBP Officer knew or should have known that his conduct would cause Jane Doe emotional distress. Since the CBP Officer's interrogation and assault, Jane Doe has suffered from an acute depressive disorder and chronic and severe anxiety. She has experienced extreme, persistent fear that she will again be detained by CBP. This fear has led to difficulty in undertaking tasks that she completed routinely before November 15, 2019, and, furthermore, has greatly impaired her ability to sleep.

59. Moreover, the CBP Officer's acts have left Jane Doe in constant fear that she will be further targeted or harmed for being a transgender woman, a fear that has exacerbated Jane Doe's Gender Dysphoria, which before that time, had been well treated for years.

60. In addition, Jane Doe was not able to heal properly from her glottoplasty because she was forced to use her vocal cords during the CBP Officer's interrogation and assault. Being

forced to use her vocal cords caused the stitching in her vocal cords to rip, leaving her with a hole in one of her vocal cords.

61. The damage to Jane Doe's vocal chords made her voice sound robotic and made her experience significant pain.  Jane Doe was forced to undergo a corrective glottoplasty to fix this hole, and doctors have informed her that she likely needs to undergo additional surgery.  To this day, Jane Doe experiences a persistent dry throat and is unable to comfortably breathe at night.  She cannot speak without experiencing a loss of breath and pain, which has impeded her ability to work.  Additionally, the damage to her voice and the scarring to her breasts have exacerbated her symptoms of Gender Dysphoria.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
**(ASSAULT)**
**(Claim Under the Federal Tort Claims Act)**
**(Against Defendant United States of America)**

62. Plaintiff re-alleges and incorporates by reference the allegations contained in the previous paragraphs as if fully set forth herein.

63. Under Massachusetts law, liability for the tort of assault arises where the defendant acts intending to cause a harmful or offensive contact with the plaintiff, or imminent apprehension of such harmful or offensive contact, and as a result, the plaintiff apprehends such action by the defendant.

64. The CBP Officer knew or should have reasonably known that Jane Doe would regard his intended physical contact as offensive.

65. Jane Doe perceived the CBP Officer's actions leading up to his harmful and offensive contact with her body, including when the CBP Officer stated that he would like to "fuck" her and directly approached Jane Doe in the small interrogation room several times.

11

66. As a factual and proximate result of perceiving the CBP Officer's intended actions, Jane Doe suffered humiliation and physical and emotional injury.

67. The CBP Officer was at all times relevant herein an employee and federal law enforcement officer of the United States, acting in the scope of his employment through his own actions under circumstances that would render the United States, if a private person, liable under Massachusetts law for the damages that his actions caused Jane Doe.

68. Under the Federal Tort Claims Act, the United States is liable to Jane Doe for the tort of assault.

**SECOND CLAIM FOR RELIEF**
**(BATTERY)**
**(Claim Under the Federal Tort Claims Act)**
**(Against Defendant United States of America)**

69. Plaintiff re-alleges and incorporates by reference the allegations contained in the previous paragraphs as if fully set forth herein.

70. Under Massachusetts law, liability for the tort of battery arises where the defendant intends to cause harmful or offensive contact to another, and the harmful or offensive contact occurs to the plaintiff, directly or indirectly.

71. The CBP Officer subjected Jane Doe to multiple instances of intentional and offensive physical contact by rubbing his erect penis and his body against Jane Doe without justification or consent.

72. As a factual and proximate result of the CBP Officer's intentional, offensive contact, Jane Doe suffered humiliation and emotional injury.

73. The CBP Officer was at all times relevant herein an employee and federal law enforcement officer of the United States, acting in the scope of his employment through his own

actions under circumstances that would render the United States, if a private person, liable under Massachusetts law for the damages that his actions caused Jane Doe.

74. Under the Federal Tort Claims Act, the United States is liable to Jane Doe for the tort of battery.

**THIRD CLAIM FOR RELIEF**
(Violation of the Massachusetts Civil Rights Act, Mass. Gen. L. c. 12, §§ 11 H, 11I)
(Claim Under the Federal Tort Claims Act)
(Against Defendant United States of America)

75. Plaintiff re-alleges and incorporates by reference the allegations contained in the previous paragraphs as if fully set forth herein.

76. Under Massachusetts law, a defendant violates the Massachusetts Civil Rights Act where the defendant interferes by threats, intimidation, or coercion with the plaintiff's exercise and enjoyment of the plaintiff's rights under the United States Constitution or the laws of the United States of the Commonwealth of Massachusetts.

77. The CBP Officer violated Jane Doe's rights under state and federal law to be free from harassment, excessive force, and unreasonable seizures under the Fourth Amendment of the United States Constitution and Article 14 of the Massachusetts Declaration of Rights, including when he rubbed his erect penis and his body against Jane Doe without justification or consent, ordered her to expose her breasts, and stated that he would like to "fuck" her.

78. As a factual and proximate result of the CBP Officer's actions depriving her of her rights, Jane Doe suffered humiliation, physical injury, invasion of her bodily integrity, and severe emotional distress.

79. Under the Federal Tort Claims Act, the United States is liable to Jane Doe for the CBP Officer's actions that deprived Jane Doe of her rights.

13

**FOURTH CLAIM FOR RELIEF**
**(FALSE IMPRISONMENT)**
**(Claim Under the Federal Tort Claims Act)**
**(Against Defendant United States of America)**

80.     Plaintiff re-alleges and incorporates by reference the allegations contained in the previous paragraphs as if fully set forth herein.

81.     Under Massachusetts law, liability for the tort of false imprisonment arises where intentionally and without justification the defendant directly or indirectly confines the plaintiff, and the plaintiff is conscious of or harmed by that confinement.

82.     As described above, the CBP Officer intentionally and unjustifiably prolonged CBP's detention and/or restraint of Jane Doe in the small interrogation room without her consent.

83.     During that prolonged detention, the CBP Officer pressed his erect penis and his body against Jane Doe.  The CBP Officer also told Jane Doe that CBP was investigating her, after she had already expressly disclosed her immigration status.  During that detention, the CBP Officer gave Jane Doe several commands, including that she expose her breasts.  When the CBP Officer said this, Jane Doe felt that she could not refuse his command.  Jane Doe was therefore not free to leave.

84.     As a factual and proximate result of the CBP Officer's willful, unlawful and prolonged detainment of Plaintiff and Plaintiff's consciousness thereof, Plaintiff suffered physical and emotional harm.

85.     The CBP Officer was at all times relevant herein an employee and federal law enforcement officer of the United States, acting in the scope of his employment through his own actions under circumstances that would render the United States, if a private person, liable under Massachusetts law for the damages that his actions caused Jane Doe.

86. Under the Federal Tort Claims Act, the United States is liable to Jane Doe for the tort of false imprisonment.

**FIFTH CLAIM FOR RELIEF**
**(INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS)**
**(Claim Under the Federal Tort Claims Act)**
**(Against Defendant United States of America)**

87. Plaintiff re-alleges and incorporates by reference the allegations contained in the previous paragraphs as if fully set forth herein.

88. Under Massachusetts law, liability for the tort of intentional infliction of emotional distress arises where the defendant intends, knows, or should know that his outrageous and extreme conduct will inflict on the plaintiff emotional distress, and that his extreme and outrageous conduct in fact causes the plaintiff sever emotional distress.

89. The CBP Officer engaged in extreme and outrageous conduct throughout Jane Doe prolonged detention, including by rubbing his penis and his body against Jane Doe multiple times without her consent while she was visibly and audibly crying, stating that he would like to "fuck" Jane Doe, and ordering Jane Doe to expose her breasts.

90. The CBP Officer intended, knew, or should have known that his extreme and outrageous conduct would cause emotional distress to Jane Doe.

91. As a factual and proximate result of the CBP Officer's extreme and outrageous conduct, Plaintiff suffered severe emotional harm.

92. The CBP Officer was at all times relevant herein an employee and federal law enforcement officer of the United States, acting in the scope of his employment through his own actions under circumstances that would render the United States, if a private person, liable under Massachusetts law for the damages that his actions caused Jane Doe.

93. Under the Federal Tort Claims Act, the United States is liable to Jane Doe for intentional infliction of emotional distress.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief and judgment as follows:

a. Trial by judge;

b. Entry of judgment of Plaintiff against Defendant on Plaintiff's claims for relief;

c. Compensatory damages in an amount to be proven at trial;

d. Costs and reasonable attorneys' fees;

e. For such other relief as the Court deems just and proper.

Respectfully submitted,

Jane Doe

By Her Attorneys,

*/s/ Elaine H. Blais*
Elaine H. Blais (BBO# 656142)
EBlais@goodwinlaw.com
Louis L. Lobel (BBO# 693292)
LLobel@goodwinlaw.com
Ian Q. Rogers (BBO# 709651)
IRogers@goodwinlaw.com
Adrian Jose Santiago Ortiz (BBO# 713630)
ASantiagoOrtiz@goodwinlaw.com

GOODWIN PROCTER LLP
100 Northern Avenue
Boston, MA  02210
Telephone:   +1 617 570 1000
Facsimile:    +1 617 523 1231

Dated: June 3, 2024