UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| JANE DOE, <br><br> Plaintiff, <br><br> v. <br><br> UNITED STATES OF AMERICA, <br><br> Defendant. | ) <br> ) <br> ) <br> ) <br> ) <br> ) No. 1:24-cv-11445-JEK <br> ) <br> ) <br> ) <br> ) <br> ) |

### MEMORANDUM AND ORDER ON PLAINTIFF'S MOTION TO PROCEED UNDER A PSEUDONYM AND FOR A PROTECTIVE ORDER

The plaintiff in this action, Jane Doe, alleges that a United States Customs and Border Protection ("CBP") officer subjected her to unwanted sexual contact while she was in CBP's custody at Boston Logan International Airport. She seeks to proceed under a pseudonym because her case involves sensitive medical information, details of her experience of unwanted sexual contact, and serious allegations against a federal officer.[1] The defendant does not oppose Doe's motion. Concluding that this case falls within two paradigms identified by the First Circuit for matters that warrant pseudonymous litigation, the Court will grant the motion.

### BACKGROUND

For purposes of this motion, and at this early stage in the proceedings, the Court recounts the facts as alleged in the complaint. *See Doe v. M.I.T.*, 46 F.4th 61, 64, 73 (1st Cir. 2022) (drawing facts from the complaint because they were "largely undisputed for present purposes," but noting

---

[1] Doe has stated that she will file with the Court and serve on the defendant a copy of the complaint that uses her full name.

that "an order granting pseudonymity should be periodically reevaluated if and when circumstances change").

Doe is a transgender woman. ECF 1, ¶ 11. At the time of the alleged incident, she was a lawful permanent resident of the United States and had been granted asylee status after experiencing violent attacks based on her gender and sexual identity in Honduras. *Id.* ¶¶ 11, 15-16.

In 2019, she traveled to Colombia for gender-affirming medical care, including a breast augmentation and a surgical procedure on her vocal cords called a Wendler glottoplasty. *Id.* ¶ 21. On November 15, 2019, ten days after her surgery, she returned to the United States and entered passport control at Boston Logan International Airport. *Id.* ¶ 22. Doe presented her valid entry documents to the passport officer, as well as a doctor's note indicating that she had been prescribed total voice rest due to her recent glottoplasty. *Id.* ¶¶ 24-25. Upon review of these documents, Doe was escorted first to a large waiting area, and then to a small interrogation room, for further questioning. *Id.* ¶¶ 27-29.

Doe's primary language is Spanish, though she understood some English at the time. *Id.* ¶ 30. An interpreter was present in the small interrogation room at first but left shortly after the questioning started. *Id.* A CBP officer subsequently interrogated Doe in English for several hours. *Id.* ¶¶ 31-32. The officer told Doe that she might be deported to Honduras and that "he did not 'know what [CBP was] going to do with [her].'" *Id.* ¶ 33. He then asked intrusive questions about Doe's genitalia. *Id.* ¶ 35. Doe felt she had to respond to the officer's questions despite her prescribed vocal rest, because she was "frightened by the CBP Officer's salacious demeanor and the threat of deportation." *Id.* ¶ 36. The officer ordered Doe to expose her breasts to verify that she was a woman. *Id.* ¶ 39. Crying, Doe obeyed his order despite her "dread and humiliation" because

she "felt she had no choice but to comply." *Id.* ¶¶ 40-41. The officer then "pressed his body against her, and rubbed his erect penis against [her] buttocks," while Doe, "filled with panic and dread," "continued to cry, visibly and audibly." *Id.* ¶ 42. Later in the interrogation, the officer told Doe that "he would 'help' her with her immigration status and that she 'should not worry'" as he "licked his lips in a sexually suggestive manner." *Id.* ¶ 46. The officer told her that "he 'likes transgender women,'" "continued to lick his lips," and "rubbed his erect penis through his trousers." *Id.* The officer then ordered Doe to expose her breasts again and propositioned Doe for sex. *Id.* ¶¶ 48-49. Doe refused, and the officer told her that "he would like to 'fuck' [her]." *Id.* ¶ 49. Again, the officer moved behind Doe, pressing his body against her and rubbing his penis against her buttocks as she was "audibly sobbing and visibly weeping." *Id.* ¶ 50.

Towards the end of the interrogation, the officer brought Doe's luggage into the interrogation room and asked her to lift her luggage on the table. *Id.* ¶ 52. Doe complied and, as a result, tore the stitching from her breast augmentation. *Id.* The officer opened and searched her luggage without permission. *Id.* ¶ 53. He also searched her phone. *Id.* The officer then gave her an immigration document and instructed her to sign it. *Id.* ¶ 54. Finally, Doe was told, for the first time since she was escorted from passport control, that she was allowed to leave. *Id.* ¶ 56.

As a result of this incident, Doe has experienced "acute depressive disorder and chronic and severe anxiety." *Id.* ¶ 58. Her fear of being detained again has impaired her ability to complete tasks she was able to do routinely before the incident and has affected her sleep. *Id.* She also is in constant fear of being targeted again for being a transgender woman, exacerbating her gender dysphoria. *Id.* ¶ 59. Her glottoplasty did not heal properly because she was forced to speak during the interrogation and ripped the stitching in her vocal cords. *Id.* ¶ 60. As a result, she had to undergo a corrective glottoplasty to repair the damage and will likely need another surgery. *Id.* ¶ 61. The

sound of her voice has been affected, and she now experiences persistent dry throat, cannot breathe comfortably at night, and cannot speak without loss of breath and pain. *Id.* The damage to her voice and scarring on her breasts have also worsened her gender dysphoria. *Id.*

## DISCUSSION

The strong presumption against pseudonymous litigation gives way only in "exceptional cases." *M.I.T.*, 46 F.4th at 67 (citing *Does 1-3 v. Mills*, 39 F.4th 20, 25 (1st Cir. 2022)) (quotation marks omitted). To determine whether a case is "exceptional," a court must apply a "totality of the circumstances" test, balancing "the interests asserted by the movant in favor of privacy against the public interest in transparency," and assessing whether the case fits within four non-exhaustive "paradigms" that ordinarily warrant pseudonymity. *Id.* at 70-72 (quotation marks omitted). Doe argues, and the Court agrees, that her case fits two of the paradigms described by the First Circuit.

The first paradigm involves litigants who reasonably fear that disclosure of their identities will cause them "unusually severe harm (either physical or psychological)." *Id.* at 71. This category includes, but is not limited to, survivors of sexual assault, *id.* (citing *Doe v. Ayers*, 789 F.3d 944, 945 (9th Cir. 2015)), and litigants dealing with medical conditions that might be exacerbated by public disclosure, *id.* (citing *Lauren B. v. Baxter Int'l Inc. & Subsidiaries Welfare Benefit Plan for Active Emps.*, 298 F.R.D. 571, 573 (N.D. Ill. 2014)). Doe has alleged that revealing her identity would result in the disclosure of intimate medical details, including the nature of her surgeries in Colombia, as well as the fact that she is a survivor of unwanted sexual contact. She has alleged that her experience in CBP custody was traumatic, heightened her gender dysphoria, and led to depression and anxiety. She further alleges that disclosure of her identity would risk further exacerbating these conditions. At this stage in the proceedings, these allegations are sufficient to meet the first paradigm.

4

The third paradigm concerns "cases in which anonymity is necessary to forestall a chilling effect on future litigants who may be similarly situated." *M.I.T.*, 46 F.4th at 71. Classic examples of this paradigm include "cases involving 'intimate issues such as sexual activities, . . . bodily autonomy, [and] medical concerns.'" *Id.* (quoting *In re Sealed Case*, 971 F.3d 324, 327 (D.C. Cir. 2020)). Doe's case arises out of an incident of alleged sexual misconduct by a law enforcement official and involves Doe's personal medical details. The Court agrees that public disclosure of Doe's identity could deter similarly situated transgender individuals, who experience disproportionate rates of sexual violence,[2] from bringing suit against law enforcement officials for serious misconduct and from seeking redress for unwanted sexual contact. Doe's case therefore meets the third paradigm, as well, at this stage in the proceedings. Her motion to proceed by pseudonym is, accordingly, well justified, and her privacy interests outweigh the public's interest in ascertaining her identity.

## CONCLUSION AND ORDER

For the foregoing reasons, Doe's motion, ECF 2, is GRANTED. It is hereby ORDERED that:

(1) the parties shall refer to the plaintiff by the pseudonym "Jane Doe" in all filings;

(2) the parties are prohibited from disclosing the plaintiff's identity to any third party unless such disclosure is necessary to litigate this action; and

---

[2] *See, e.g.*, Lauren Abern et al., *Prevalence of Sexual Assault in a Cohort of Transgender and Gender Diverse Individuals*, 38 J. Gen. Internal Med. 1331, 1331 (Apr. 2023) (finding that approximately half of transgender individuals have been a victim of sexual assault).

(3) any nonparty who is informed of the plaintiff's identity shall be provided a copy of this order by the disclosing party and shall also be subject to this order.

SO ORDERED.

Dated: October 15, 2024

/s/ Julia E. Kobick
JULIA E. KOBICK
UNITED STATES DISTRICT JUDGE