UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| JANE DOE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:24-cv-11445-JEK |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM AND ORDER ON
DEFENDANT'S PARTIAL MOTION TO DISMISS**

**KOBICK, J.**

Plaintiff Jane Doe alleges that a United States Customs and Border Protection ("CBP") officer forced unwanted sexual contact upon her and unlawfully seized her luggage while she was in CBP's custody at Boston Logan International Airport. The United States has moved to dismiss Count 3 of her complaint, which asserts a nested claim: a Federal Tort Claims Act ("FTCA") claim premised on a violation of the Massachusetts Civil Rights Act ("MCRA"), which in turn alleges that the CBP officer interfered with Doe's rights under the Fourth Amendment to the United States Constitution and Article 14 of the Massachusetts Declaration of Rights. Agreeing with the government that subject matter jurisdiction does not extend to this claim, the Court will grant the motion.

**BACKGROUND**

The following facts are drawn from the complaint and assumed true on a motion to dismiss. Doe is a transgender woman. ECF 1, ¶ 11. At the time of the alleged incident, she was a lawful

permanent resident of the United States and had been granted asylum after facing violent attacks in Honduras based on her gender and sexual identity. *Id.* ¶¶ 11, 15-16.

In 2019, Doe traveled to Colombia to receive gender-affirming breast augmentation and vocal cord surgeries. *Id.* ¶ 21. On November 15, 2019, ten days after her surgery, she returned to the United States via Boston Logan International Airport. *Id.* ¶ 22. At the airport's passport control, she presented her valid entry documents and a doctor's letter indicating that she had just had surgery and had been prescribed absolute vocal rest. *Id.* ¶¶ 24-25. A passport officer first brought Doe to a large waiting area, and then to a small interrogation room, for questioning by a CBP officer about her identity and immigration status. *Id.* ¶¶ 27-29.

Doe primarily speaks Spanish, though she understood some English at the time. *Id.* ¶ 30. An interpreter initially was present to facilitate the interview but left soon after Doe was taken to the interrogation room. *Id.* After the interpreter's departure, the CBP officer interrogated Doe alone for hours in English. *Id.* ¶¶ 31-32. During the questioning, the CBP officer told Doe that she might be deported to Honduras, which caused her significant and visible distress. *Id.* ¶¶ 33-34. The officer also asked Doe intrusive questions about her genitalia with a "salacious demeanor." *Id.* ¶¶ 35-36. Doe felt compelled to respond, despite her prescribed vocal rest, because she was afraid of what would happen if she did not answer. *Id.* ¶ 36. The officer then ordered Doe to expose her breasts. *Id.* ¶ 39. Crying and distressed, Doe "felt she had no choice but to comply." *Id.* ¶ 40. Two times during the interrogation, the officer moved behind her, "pressed his body against her, and rubbed his erect penis against [her] buttocks." *Id.* ¶¶ 42, 50. Doe was "filled with panic and dread" and "audibly sobbing" as he did so. *Id.* The officer also made several sexual remarks to Doe while stating that "he would 'help' her with her immigration status." *Id.* ¶ 46. Among other comments,

he told her that "he 'likes transgender women,'" propositioned her for sex, and again ordered her to expose her breasts. *Id.* ¶¶ 46, 48-49.

Nearly three hours into the interrogation, the CBP officer left the room and returned with Doe's luggage. *Id.* ¶ 52. At the officer's request, Doe lifted her luggage onto the table and, in doing so, tore the stitching from her breast augmentation. *Id.* The officer then opened her luggage and searched it without her permission. *Id.* ¶ 53. He also searched her phone. *Id.* After the search, he instructed her to sign certain immigration documents and then told her she could leave. *Id.* ¶¶ 54-56.

Doe filed her complaint on June 3, 2024, asserting five claims against the United States pursuant to the FTCA, 28 U.S.C. §§ 1346(b), 2671-2680: (1) assault; (2) battery; (3) a violation of the MCRA, M.G.L. c. 12 §§ 11H, 11I; (4) false imprisonment; and (5) intentional infliction of emotional distress. ECF 1. She seeks compensatory damages in an amount to be determined at trial. *Id.* at 16. Responding, the government filed an answer and a partial motion to dismiss, the latter of which contends that Count 3 of the complaint must be dismissed under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) for lack of subject matter jurisdiction and failure to state a claim. ECF 13, 15. The government did not seek dismissal of Doe's remaining claims under the FTCA. After a hearing, the Court took the motion under advisement. ECF 23.

## STANDARD OF REVIEW

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) that raises a facial challenge to subject matter jurisdiction is reviewed under a standard that is "essentially the same as a Rule 12(b)(6) analysis." *Cebollero-Bertran v. Puerto Rico Aqueduct & Sewer Auth.*, 4 F.4th 63, 69 (1st Cir. 2021). The Court "must credit the plaintiff's well-pled factual allegations and draw all reasonable inferences in the plaintiff's favor" to determine whether the complaint plausibly

3

alleges a basis for subject matter jurisdiction. *Merlonghi v. United States*, 620 F.3d 50, 54 (1st Cir. 2010). "[T]he party invoking the jurisdiction of a federal court carries the burden of proving its existence." *Johansen v. United States*, 506 F.3d 65, 68 (1st Cir. 2007) (quotation marks omitted).

## DISCUSSION

"As a sovereign, the United States is immune from suit unless it consents to being sued." *Reyes-Colón v. United States*, 974 F.3d 56, 58 (1st Cir. 2020). This immunity is "jurisdictional in nature": "the 'terms of [the United States'] consent to be sued in any court define that court's jurisdiction to entertain the suit.'" *Fed. Deposit Ins. Corp. v. Meyer*, 510 U.S. 471, 475 (1994) (quoting *United States v. Sherwood*, 312 U.S. 584, 586 (1941)). The plaintiff bears the burden of proving that the United States has unequivocally waived its immunity, and courts must construe statutory waivers strictly in favor of the sovereign. *See U.S. Dep't of Energy v. Ohio*, 503 U.S. 607, 615 (1992); *Mahon v. United States*, 742 F.3d 11, 14 (1st Cir. 2014).

One example of such a waiver is the FTCA, which waives sovereign immunity over claims seeking money damages for injuries "caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1). The statutory phrase "law of the place" refers to the law of the State where the relevant conduct occurred. *Meyer*, 510 U.S. at 478. Thus, to state a claim within the FTCA's waiver of immunity, a plaintiff must allege "'some relationship between the governmental employe[e] and the plaintiff to which state law would attach a duty of care in purely private circumstances.'" *McCloskey v. Mueller*, 446 F.3d 262, 267 (1st Cir. 2006) (quoting *Sea Air Shuttle Corp. v. United States*, 112 F.3d 532, 537 (1st Cir. 1997)). Federal constitutional claims do not fall within this waiver of

immunity, as "federal law, not state law, provides the source of liability for a claim alleging the deprivation of a federal constitutional right." *Meyer*, 510 U.S. at 478.

Count 3 of Doe's complaint, which asserts an FTCA claim, alleges that the United States, through the CBP officer, violated a state law—the MCRA—by infringing Doe's "rights under state and federal law to be free from harassment, excessive force, and unreasonable seizures under the Fourth Amendment of the United States Constitution and Article 14 of the Massachusetts Declaration of Rights." ECF 1, ¶ 77. The MCRA provides a cause of action for an injured person when another person, "whether or not acting under color of law," interferes or attempts to interfere "by threats, intimidation or coercion, with the exercise or enjoyment . . . of [their] rights secured by the constitution or laws of the United States, or of rights secured by the constitution or laws of the commonwealth." M.G.L. c. 12 §§ 11H, 11I. A plaintiff claiming an MCRA violation must show that: "(1) the exercise or enjoyment of some constitutional or statutory right; (2) has been interfered with, or attempted to be interfered with; and (3) such interference was by threats, intimidation, or coercion." *Barron v. Kolenda*, 491 Mass. 408, 423 (2023) (quotation marks omitted). The MCRA is similar to 42 U.S.C. § 1983, with two notable differences: (1) the MCRA does not require state action, but rather allows for claims against both public officials and private individuals; and (2) the MCRA provides a remedy only when a violation of a person's constitutional or statutory rights also involves threats, intimidation, or coercion. *See 3137, LLC v. Town of Harwich*, 126 F.4th 1, 13 (1st Cir. 2025); *Nolan v. CN8*, 656 F.3d 71, 76 (1st Cir. 2011).

The government contends that the Court lacks subject matter jurisdiction over Count 3 because the United States has not waived its sovereign immunity over claims brought under the MCRA. In the government's view, the FTCA waives sovereign immunity as to tort claims against the United States, but not as to claims of a constitutional dimension, such as those asserted pursuant

5

to the MCRA. Allowing a plaintiff to raise constitutional claims against the United States by way of a state statute like the MCRA, the government argues, would undercut the Supreme Court's holding in *Meyer* that the FTCA does not waive the United States' immunity as to claims asserting federal constitutional violations. *See* 510 U.S. at 478. Doe, for her part, argues that her claim falls within the FTCA's sovereign immunity waiver because the source of substantive liability she invokes comes from state law (that is, the MCRA), not federal law, and the MCRA allows for liability against private persons for conduct like that committed by the CBP officer here.

The Court is not persuaded by the government's broad argument that a plaintiff can never assert an FTCA claim against the United States premised on an MCRA violation. When a plaintiff, like Doe, alleges such a claim, she satisfies the "law of the place" element of the FTCA's sovereign immunity waiver, because her claim is premised on a state law that creates private liability for interfering with constitutional or statutory rights. Unlike the cases on which the government relies, such an FTCA claim is not premised on a direct violation of federal constitutional rights. *See Meyer*, 510 U.S. at 478 (predicating its holding that "the United States simply has not rendered itself liable under § 1346(b) for constitutional tort claims" on the plaintiff's failure to allege a state-law source of liability); *Villanueva v. United States*, 662 F.3d 124, 127 (1st Cir. 2011) (same). Violations of the MCRA are meaningfully distinct from federal constitutional violations, because the MCRA addresses interference with state or federal rights by threats, intimidation, or coercion, not direct violations of these rights alone, and because the MCRA can reach private conduct. *See 3137, LLC*, 126 F.4th at 13; *Longval v. Comm'r of Corr.*, 404 Mass. 325, 333 (1989).

Nevertheless, the Court agrees with the government that Count 3 of Doe's complaint in this case falls outside the scope of the FTCA's waiver of sovereign immunity. *See* 28 U.S.C. § 1346(b)(1). To fall within the waiver of immunity, the plaintiff must also allege that the federal

6

employee committed the wrongful act or omission "under circumstances where the United States, if a private person, would be liable" under state law. *Id.* In assessing whether this element is met, the Court must "look for some relationship between the governmental employe[e] and the plaintiff to which state law would attach a duty of care in purely private circumstances." *McCloskey*, 446 F.3d at 267 (quotation marks omitted). "[I]f a private person under the same circumstances would owe no duty to a victim, there would be no state-law liability," and, accordingly, no subject matter jurisdiction over the FTCA claim. *Id.*

Here, the circumstances of Doe's experience at Logan Airport, insofar as they form the basis of an MCRA claim asserting interference with Fourth Amendment and Article 14 rights, fall beyond the reach of the FTCA. This is so because the Fourth Amendment's prohibition against unreasonable searches and seizures restricts government officials but does not extend to searches or seizures conducted by private parties. *See, e.g.*, *Burdeau v. McDowell*, 256 U.S. 465, 475 (1921); *United States v. Momoh*, 427 F.3d 137, 140 (1st Cir. 2005); *Commonwealth v. Jung*, 420 Mass. 675, 686 (1995). And a search or seizure by a private party likewise does not implicate rights protected by Article 14. *See Folmsbee v. Tech Tool Grinding & Supply, Inc.*, 417 Mass. 388, 391-92 (1994); *Turner v. Fraser Eng'g Co.*, No. 952143, 1996 WL 1186906, at *1 (Mass. Super. Oct. 25, 1996). Since the Fourth Amendment and Article 14 rights undergirding Doe's MCRA theory would not apply to the relevant conduct had it been committed by a private party, the MCRA would not "attach a duty of care" in analogous "purely private circumstances." *McCloskey*, 446 F.3d at 267 (quotation marks omitted); *see Turner*, 1996 WL 1186906, at *1 ("The Company is a private employer, and its actions do not implicate the Fourth Amendment or art. 14. As a result, the Company also cannot violate the [MCRA] on the basis of an alleged violation of the right to be

7

free from unreasonable searches and seizures[.]" (citations omitted)). Consequently, Doe's claim does not fall within the FTCA's waiver of sovereign immunity.

The conclusion that the Court lacks subject matter jurisdiction over Count 3 does not leave Doe without a remedy. The four other counts in Doe's complaint likewise assert FTCA claims, each premised on a tort—assault, battery, false imprisonment, and intentional infliction of emotional distress—recognized under Massachusetts law. The government did not move to dismiss these claims, and so Doe may continue to pursue her theory that, because of the CBP officer's conduct, including forcing unwanted sexual contact upon her during the interview, the United States is liable to her under the FTCA.

## CONCLUSION AND ORDER

For the foregoing reasons, the defendant's partial motion to dismiss is GRANTED, and Count 3 of Doe's complaint is DISMISSED.

SO ORDERED.

/s/ Julia E. Kobick
JULIA E. KOBICK
UNITED STATES DISTRICT JUDGE

Dated: June 23, 2025